277 So.2d 372

**Grover J. HAYNES, alias,**

v.

**STATE.**

**7 Div. 175.**

Court of Criminal Appeals of Alabama.
May 1, 1973.

William J. Baxley, Atty. Gen., and Richard F. Calhoun, Asst. Atty. Gen., for the State.

HARRIS, Judge.

This is the fourth case stemming from the theft of a 1970 two-door hardtop Pontiac Catalina automobile on October 19,

James S. Hubbard, Anniston, for appellant.

1971, from a church parking lot in Homewood, Jefferson County, Alabama, the property of Otis C. Duvall, Jr., of Phenix City, Alabama. The identification number of this vehicle was 252370P101096, and the license tag number on the car was 57–5198, issued to Duvall by the Judge of Probate of Russell County.

Jackie Tant, Hugh Gray Whistenant, and Billy McGullion were all convicted in the Circuit Court of Cleburne County, in separate trials, for buying, receiving, concealing, etc., this identical automobile and all appealed their convictions to this Court. Tant's case was dismissed on his own motion on April 10, 1972. The case against Whistenant was affirmed on February 20, 1973, 50 Ala.App. 182, 278 So.2d 183, and the case against McGullion was affirmed on April 17, 1973, 50 Ala.App. 55, 276 So.2d 640. The opinions in *Whistenant* and *McGullion* deal in some detail with the factual background leading up to their convictions and in a large measure are relevant and material to the instant case. For the sake of brevity attention to those cases is invited. We will set out such additional facts as we deem necessary to a clear understanding of this case.

Appellant was indicted, tried and convicted of buying, receiving, concealing, etc., one engine No. 20P101096, one transmission No. 20P101096, taken from a 1970 Pontiac automobile, identification 252370P101096. The evidence is without dispute that the above listed identification is the correct number for this particular automobile as it was on the bill of sale delivered to Duvall at the time he purchased same. Proof as to the engine and transmission number was developed during the trial by state witness Roger Paulk. He testified that he was a special agent with National Automobile Theft Bureau and that his job is to investigate stolen motor vehicles and to assist law enforcement officers in the investigation of any commercial theft ring operation; that he had special training in the methods and procedures employed in the identification of motor ve-

hicles of major automobiles manufactured in the United States and other countries; that he had a book that covers 1970 Pontiac Catalinas. He took the serial or identification number 252370P101096 and broke the symbols or digits down in the following manner: the first digit 2 stands for Pontiac; the next four digits 5237 means Catalina, two-door hardtop; the next digit 0 stands for a 1970 model; the letter P stands for Pontiac, Michigan, the assembly plant; that any numbers after the "assembly plant" would be sequential production numbers and would represent the identification number for this particular vehicle of this particular body style; the last six digits— 101096—denote the automobile involved in this case. He further testified that Pontiac has a code for identifying motors and transmissions for 1970 Pontiac automobiles. He explained it this way: on engines and transmissions for 1970 models (20P101096) the numeral 2 stands for Pontiac; "0" stands for a 1970 model; "P" stands for the assembly plant, Pontiac, Michigan; that the next six digits "101096" denotes the particular body style of the automobile. He stated that on a 1970 Pontiac automobile the identification number is on a metal plate on the left hand side of the windshield and is fastened to the dash with rivets.

On cross-examination, this witness testified that assuming the serial or identification number on the metal plate was correct at the time the automobile left the factory in Pontiac, Michigan, the motor and transmission number would have been "20P101096," which are the same numbers set out in the indictment in this case. He said the vehicle identification number is too long to stamp on the engine and transmission, hence the abbreviated number in accordance with a code book of the Pontiac division of General Motors.

Jimmy Johnson, another special agent for National Automobile Theft Bureau testified that on the morning of October 19, 1971, he was parked in front of the Oxford Nursing Home and around 9:00 to

9:15 A.M. he saw Jimmy Haynes, the son of appellant, in a Riviera Buick driving toward the Interstate highway and turn west towards Birmingham; that Billy McGullion was in the car with Jimmy Haynes; that witness followed them to the Eastwood Mall in Birmingham, Alabama, where he lost sight of them in the traffic. This was the day the Pontiac was stolen from the church parking lot in Homewood and driven by McGullion to Hugh Gray Whistenant's barn in Cleburne County.

Lieutenant E. E. Hardegree, a State Investigator, who was primarily engaged in auto theft work, participated in an investigation in the Calhoun-Cleburne County Area on October 19, 1971. From a vantage point near Whistenant's farm in Cleburne County, he observed a 1970 Pontiac, with a light green bottom and dark vinyl top, bearing a 1972 Alabama license tag number 57–5198, driven by Billy McGullion enter the barn on Whistenant's place at about 1:09 P.M. He also observed Jackie Tant and Whistenant about 10:50 on the same date going to this farm. Tant was driving a blue pickup truck and Whistenant was driving a 1960 white Oldsmobile. Around 5:50 P.M. he saw Tant leave the barn in the blue pickup with the rear clip of the Pontiac on the truck. He followed Tant to a garage on Highway 431 about twelve (12) miles from the Whistenant farm.

A State Trooper, Corporal A. F. Clifton, who was on the same assignment as Lt. Hardegree, testified that around 10:00 A.M. on October 19, 1971, he was driving south on Noble Street in Anniston, on which street appellant's garage was located, and saw Whistenant pulling out from Haynes Auto Parts in a 1960 white Oldsmobile, followed by Jackie Tant in a blue pickup truck. Around noon on that date he went over to Cleburne County and saw both of the vehicles at Whistenant's barn. He was still there when McGullion drove up in a 1970 Pontiac and put it in a stall in the barn. McGullion left driving the 1960 white Oldsmobile and he observed Whis-

tenant and Tant disassemble the Pontiac and saw Tant leave in the blue pickup with the rear clip on the back of the truck. He then observed Whistenant winch the motor out of the Pontiac and do some work on it. He was back there the next morning and saw the front section of the Pontiac loaded on the blue pickup and saw the engine and transmission loaded on a red Ford pickup truck. He saw both of these pickups driven by Tant and Whistenant carry their loads to the garage on Highway 431. Later that same day, he saw the red Ford pickup on which the engine and transmission was loaded at Haynes Auto Parts on Noble Street in Anniston. He saw it parked at this garage around noon.

Herbert Turley was the body and fender man at the garage located on Highway 431 where the rear clip of this Pontiac was carried. He testified that this garage was owned and operated by Jimmy Haynes, the son of appellant. Appellant testified that his son, Jimmy Haynes, worked for him. Turley testified that he took the rear clip of this Pontiac and put it on another Pontiac that had been wrecked and which was brought to this garage by Jimmy Haynes and that he rebuilt this automobile for young Haynes. He observed the motor and transmission on the red Ford pickup driven by Jackie Tant and that Tant drove this pickup from the 431 garage headed toward Anniston.

Appellant denied any knowledge of the engine and transmission that the officers found in his place of business and further denied that he had ever seen parts of the Pontiac in question. The only explanation he gave as to these items being on his premises was that there was a *possibility* that they could have been delivered to his place by a "circuit service truck" for some other person who had placed an order for this type motor and transmission. He explained that his place was a "drop off" for automobile parts for numerous persons engaged in the auto repair business in the Anniston area and surrounding counties who ordered auto parts from dealers all

over the country because appellant was the only member of the Southern Circuit Truck System in that area of the State and that the truck belonging to the System was not authorized to "drop off" auto parts to nonmembers. He further testified that as a member of the Southern Circuit he maintained a "hot line" on a twenty-four hour basis with all members in the southeast. The "hot line" could be used by anyone in the auto repair business needing parts to repair vehicles.

Omitting the formal parts, the indictment reads as follows:

"The GRAND JURY of said County charge that, before the finding of this indictment, Grover J. Haynes alias G. J. Jaynes, whose true name is to the Grand Jury otherwise unknown, did Buy, Receive, Conceal, or Aid in Concealing One (1) engine, I/D # 20P101096, one (1) transmission I/D # 20P101096 taken from one (1) 1970 Pontiac automobile, I/D # 252370P101096, A better description of which being unknown to the Grand Jury, of the value of, engine & transmission, to-wit: $500.00, the personal property of Otis C. Duvall, knowing that the same had been stolen, or having reasonable grounds for believing same had been stolen, and not having the intent to restore it to the owner, . . . AGAINST THE PEACE AND DIGNITY OF THE STATE OF ALABAMA."

This case began with an affidavit and search warrant. They read as follows:

"SEARCH WARRANT

"STATE OF ALABAMA ⎫ Circuit                    (WCB)
"CALHOUN COUNTY ⎭ CALHOUN COUNTY COURT

"TO ANY SHERIFF OR LAWFUL OFFICER
    OF THE STATE OF ALABAMA:

"Proof by affidavit having been made this day before me by C. K. Hallford that the stolen property described in the attached affidavit is in the possession of Grover Jesse Haynes, otherwise known as G. J. Haynes at or in his dwelling or place of business. You are therefore commanded, in the day or night time, to make immediate search on the premises of said Grover Jesse Haynes, otherwise known as G. J. Haynes located at Haynes Auto Parts, 2900 Noble Street, Calhoun County, Alabama including dwelling, outhouses and motor vehicles for property described in above affidavit, and bring same before the Court.

"Dated this the 5th day of November 1971.

"/s/   Wm. C. Bibb
                    Judge of Calhoun County Court

"STATE OF ALABAMA
"CALHOUN COUNTY

"Before me, William C. Bibb, Circuit Judge of the 7th Judicial Circuit of Alabama, personally appeared C. K. Hallford, Alabama State Investigator, who being duly sworn, deposes and says that he has probable cause to believe and does believe that there is now being concealed certain stolen personal property namely, to-wit: One (1) 1969 Buick Wildcat, Engine, # 49D118471 and (1) one Transmission # 49D118471, (1) one yellow trunk lid with lock missing, and name Wildcat on it, said property is pres-

ently located at Haynes Auto Parts, 2900 Noble Street, Calhoun County, Anniston, Alabama, said stolen parts as set forth above were seen entering Haynes Auto Parts, 2900 Noble Street, Calhoun County, Anniston, Alabama on to-wit: October 14, 1971 by affiant and said fresh information that the parts set forth above were stolen is based on the following information: that T. E. Posey another Alabama State Investigator generally reputed to be truthful and reliable, who has during the past two months co-operated with affiant Hallford in furnishing theft reports, and whose information when checked has proved to be true and correct, relayed to affiant Hallford information from a theft report, which said agent T. E. Posey represented to affiant Hallford to have been truly and correctly recited from a theft report that came into the Police Department of the City of Birmingham, Alabama and was on file there on or about October 13, 1971; and that said theft report showed that One (1) 1969 Buick Wildcat Automobile with the same engine and transmission number as above belonged to Donald Martin 313 Apt. 103, Pawnee Avenue, Birmingham, Alabama and had just been stolen from him, and that the owner or proprietor of the aforesaid place is Grover Jesse Haynes, otherwise known as G. J. Haynes.

"/s/  C. K. Hallford

"Sworn to and subscribed before me this 5th day of November, 1971.

"/s/  Wm. C. Bibb

Circuit Judge, Calhoun County, Alabama

"Executed this November 5th, 1971 by searching the within described premises and confiscating the following listed property:

"One Transmission # 20P101096

"One Engine # 20P101096

"One Yellow Deck Lid with Wildcat in lower right corner and Miley in lower left corner.

"One Engine and Transmission, # 11K181927

"One Engine and Transmission, # 40H915764

"One Engine and Transmission, # 30E193368

"/s/  Roy C. Snead, Jr.  Sheriff
D.S.

"Returned this 8th day of November, 1971.

"/s/  Wm. C. Bibb,
Circuit Judge"

---

Appellant filed a motion to suppress the evidence seized under the above search warrant contending that the items to be searched for as described in the affidavit were not found by the officers executing the warrant, but the officers acting under color of the search warrant seized other property found on the described premises and this illegally seized property brought about his conviction. There are other points and issues raised on this appeal but we consider the validity of this search and seizure to be the most serious.

The magistrate taking the affidavit and issuing the search warrant was Honorable

William C. Bibb, Presiding Judge of the Seventh Judicial Circuit. He used a blank printed form commonly used by the Judge of Calhoun County Court. On the original he struck "Calhoun County" and typed "Circuit" above "Calhoun County" and put his initials in parentheses (WCB). He signed "Wm. C. Bibb" on the line at the bottom of the search warrant under which appears the words, "Judge of Calhoun County Court" without making any further changes. He took the affidavit signing his name "Wm. C. Bibb, Circuit Judge, Calhoun County, Alabama." Hon. Roy C. Snead, Jr., Sheriff of Calhoun County made the return to Judge Bibb who acknowledged same by signing his name "Wm. C. Bibb, Circuit Judge." There were no like changes made on the copy of the search warrant which the Sheriff served on appellant's wife at the time of the search. Judge Bibb testified on the hearing of the motion to suppress that after he signed the original search warrant he gave it and the copies to the District Attorney with instructions to have the copies changed to conform with the original. Appellant was out of town at the time of the search and upon his return his wife told him what had transpired, showed him the copy as well as a list or receipt left with her by the Sheriff showing the items the officers carried from the premises.

On the motion to suppress appellant introduced the copy of the search warrant served upon Mrs. Haynes by the Sheriff showing it was ostensibly issued out of the Calhoun County Court and then proved by the judge of that court, Hon. W. C. Daniel, that he did not issue the warrant. Judge Daniel testified that he recognized the signature of Judge Wm. C. Bibb, and that Judge Bibb was the Presiding Judge of the Circuit Court of Calhoun County.

The trial judge overruled the motion to suppress saying that he would take judicial knowledge that Judge Bibb was the Presiding Circuit Judge and Judge Daniel was Judge of the Calhoun County Court. We do likewise and disregard printed labels.

A circuit judge is a "magistrate" under the laws of this State. Title 15, Section 399, Code of Alabama 1940. See Mahaley v. State, 39 Ala.App. 472, 103 So.2d 824, where "magistrate" was painstakingly dealt with.

■ Title 13, Section 182, subsection 3, Code of Alabama 1940, confers authority upon circuit judges "to administer oaths and take acknowledgments and affidavits in all cases in which oaths and affidavits are required by law." A search warrant can only be issued on probable cause and it must be supported by a sworn affidavit "naming or describing the person, and particularly describing the property, and the place to be searched." Title 15, Section 102, Code of Alabama 1940. In his capacity as circuit judge, Judge Bibb was a "magistrate" authorized to issue search warrants.

■ Appellant strenuously insists that his constitutional rights were clearly violated by the search and seizure of property not described in the search warrant which resulted in his conviction and a ten year sentence in the penitentiary. On the other hand the state contends that where police officers have a warrant to search a given area for specified objects and, in the course of the search, find some other article of incriminating character not described in the warrant, the article may be seized where it is in "plain view" of such officers. We hasten to say that the *"plain view" doctrine is applicable only where there is a lawful search warrant.*

Sheriff Snead testified that there were eight or nine other officers with him at the time he gave Mrs. Haynes a copy of the search warrant. There were F.B.I. agents, State Investigators, Special Agents of the National Automobile Theft Bureau (NATB), and they all participated in the search which lasted from two to three hours. The searching party carried away the five engines and transmissions listed on the "return" which the Sheriff personally delivered to Judge Bibb.

It is to be noted that the property to be searched for as set forth in the affidavit of C. K. Hallford was "one (1) 1969 Buick Wildcat, engine No. 49D118471 and one (1) transmission No. 49D118471, and one (1) yellow trunk lid with lock missing, and the name Wildcat on it, said property is presently located at Haynes Auto Parts, 2900 Noble Street, Calhoun County, Anniston, Alabama." The affidavit further recites that "said stolen parts as set forth above were seen entering Haynes Auto Parts, 2900 Noble Street, Calhoun County, Anniston, Alabama on to-wit: October 14, 1971 by affiant and said fresh information that the parts set forth above were stolen is based on the following information: that T. E. Posey another Alabama State Investigator generally reputed to be truthful and reliable, who has during the past two months co-operated with affiant Hallford in furnishing theft reports, and whose information when checked has proved to be true and correct, relayed to affiant Hallford information from a theft report, which said agent T. E. Posey represented to affiant Hallford to have been truly and correctly recited from a theft report that came into the Police Department of the City of Birmingham, Alabama, and was on file there on or about October 13, 1971; and that said theft report showed that one (1) 1969 Buick Wildcat automobile with the same engine and transmission number as above belonged to Donald Martin, 313 Apt. 103, Pawnee Avenue, Birmingham, Alabama, and had just been stolen from him, and that the owner or proprietor of the aforesaid place is Grover Jesse Haynes, otherwise known as G. J. Haynes."

The officers could not have been searching for the engine and transmission of a 1970 Pontiac Catalina automobile under the search warrant issued in this case as it was not therein described. Affiant's statement in the affidavit relating to what he observed on October 14, 1971, at Haynes Auto Parts, 2900 Noble Street, Anniston, Alabama, was five (5) days before the Pontiac automobile was stolen.

As late as February 6, 1973, this court in the case of Walker v. State, 49 Ala.App. 741, 275 So.2d 724, certiorari denied 290 Ala. 371, 275 So.2d 732, held that *time* is the *very essence* in search warrant cases, and "to support a search warrant the proof supplied must speak as of the time of the issuance of the warrant." The affidavit in the instant case recites that "said stolen parts as set forth above were seen entering Haynes Auto Parts, 2900 Noble Street, Calhoun County, Anniston, Alabama, on to-wit: October 14, 1971 by affiant," etc. Yet affiant did not appear before a magistrate until November 5, 1971, twenty-two (22) days later. The time lag of twenty-two (22) days makes for a *stale warrant*. Affiant does not set forth the underlying circumstances surrounding his observation of the "stolen parts" entering the premises described by him. He does not say where he was when he claims to have seen what he said he saw. Did he get close enough to see the numbers— "49D118471"—on the engine and transmission? He does not say. Isn't it logical to assume that all of his information came from a theft report of the Birmingham Police Department? He does not say he personally ever saw such theft report. We have no way of knowing how the Birmingham Police Department came by such report. Was the information supplied by an unidentified informant? If so, where are the underlying facts and circumstances from which affiant concluded that the informant was credible or his information reliable? Who can say that the theft report to the Birmingham Police Department did not stem from a rumor circulating in the underworld or from a statement overheard in a neighborhood bar? Take out the statement of affiant that *he* observed the stolen parts entering Haynes Auto Parts, 2900 Noble Street, twenty-two (22) days gone by, as sketchy as it is, leaves the affidavit pregnant with hearsay upon hearsay, or some other multiple hearsay. Affiant says that his information came from another Alabama State Investigator generally reputed to be truthful and relia-

ble who had furnished theft reports in the past that, when checked, proved to be true and correct. This does not add anything of substance to the affidavit because it appears beyond peradventure that this State Investigator had nothing before him except a theft report that, somehow got into the files of the Police Department of the City of Birmingham without any explanation as to its credibility and reliability. A theft report is a hearsay document of the rankest kind.

■ We hold the affidavit does not meet the test laid down in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637; Clenney v. State, 281 Ala. 9, 198 So.2d 293; Davis v. State, 46 Ala.App. 45, 237 So.2d 635; 286 Ala. 117, 237 So.2d 640; Walker v. State, supra.

There was one man engaged in this search who seemed to know what he was looking for and that man was Roger Paulk, Special Agent with the National Automobile Theft Bureau. According to his testimony he was on assignment pertaining to the 1970 Pontiac Catalina, I/D Number 252370P101096, the property of Otis C. Duvall, Jr., which was stolen from the church parking lot in Homewood, Alabama, on October 19, 1971. During the search, he found the engine and transmission that came from this particular automobile. They are included in the return on the back of the abortive search warrant. Sheriff Snead testified that the five motors and transmissions were removed from the premises by wreckers and pickup trucks and allegedly carried to the State Troopers Station in Anniston, Alabama. The Pontiac engine and transmission haven't been seen since. Concrete evidence has been lost or destroyed. With eight or nine law enforcement officers present during the two to three hour search, and the apparent immobility of the motors and transmissions (it took a wrecker and pickup trucks to cart them away and lose them), it would have been most expedient for the Sheriff,

Paulk or one of the other officers to have gone before a magistrate and secured another search warrant describing with particularity the engine and transmission that undoubtedly had been removed from the 1970 Pontiac automobile. This might have saved the day for the search so far as this case is concerned.

Appellant relies heavily on Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231, wherein the court said:

"The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant. And the Congress in enacting the laws governing the issue and execution of this search warrant was diligent to limit seizures to things particularly described. * * *"

This turned in to be a "general search" condemned by Federal and State Courts alike.

■ This is not a case involving contraband goods or objects dangerous in themselves. Neither is it a case of a search incident to a lawful arrest. Appellant was not arrested until after indictment by the Grand Jury some ten (10) days after the search. It is not a case of exigent circumstances. To hold that the Pontiac engine and transmission were *inadvertently* discovered, we would be forced to completely disregard the testimony of the most material witness for the state, Roger Paulk. The substance of his testimony was that he knew what he was looking for and he found that which he was seeking. The plain view rule is not applicable in this case for the simple reason that this was an unlawful searching under an invalid search warrant. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564; Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726; United States v.

Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59.

In the light of our holding, we do not deem it necessary to consider other alleged errors in the record.

This cause is due to be reversed and remanded.

Reversed and remanded.

ALMON, TYSON, and DeCARLO, JJ., concur.

CATES, P. J., concurs in result.