Appellant was convicted of possessing heroin in violation of the Alabama Uniform Controlled Substances Act, now contained in Code of Alabama, 1971 Cum. Pocket Part, Tit. 22, §§ 258 (25)-258 (60). His punishment was fixed by the court at twelve years imprisonment in the penitentiary.
Appellant insists on reversible error in three particulars: (1) the severity of the sentence, (2) the overruling by the trial court of defendant's motion to quash the search warrant, and (3) asserted insufficiency of the evidence to sustain a conviction.
As disposed as we might be to more lenient sentences than are sometimes imposed in "controlled" substances cases, we also are "controlled" by principles of law that prevent the substitution of our own measure of appropriate punishment for *Page 548 
those provided by the legislature and imposed by trial courts. To this, however, appellant's answer is that the imprisonment for twelve years constitutes cruel and unusual punishment, in violation of the Eighth Amendment of the Constitution of the United States and Section 15 of the Constitution of Alabama of 1901. To this, we respond in the language of the opinion inSmith v. United States, 273 F.2d 462, 467-468, (10th Cir. 1959), involving offenses under the "Marijuana and Narcotics Statutes," resulting in consecutive sentences for a total term of fifty-two years and fines totaling thirty thousand dollars:
 "It has been said that if the prescribed penalty appears to be too harsh, `the remedy must be afforded by act of Congress, not by judicial legislation under the guise of construction.' Blockburger v. United States, supra [234 U.S. 299, 52 S.Ct. 180, 182, 76 L.Ed. 306]. In Hayes v. United States, 238 F.2d 318, 322, certiorari denied, 353 U.S. 983, 77 S.Ct. 1280, 1 L.Ed.2d 1142, this court said:
 "`The fixing of penalties for crimes is a Congressional function, and what constitutes adequate punishment is ordinarily left to the discretion of the trial judge. If the sentence is within the statutory limit, appellate courts will not interfere unless clearly cruel and unusual.'
 "The subject, including the applicability of Section 2106. [28 U.S.C.A. § 2106, providing that Federal appellate courts `may remand the cause and direct the entry of such appropriate judgment . . . as may be just under the circumstances'], was considered in United States v. Rosenberg, 2 Cir., 195 F.2d 583, 604, certiorari denied, 344 U.S. 838, 73 S.Ct. 20, 97 L.Ed. 652, 687, where it was stated:
 "`* * * "If there is one rule in the federal criminal practice which is firmly established, it is that the appellate court has no control over a sentence which is within the limits allowed by a statute." Gurera v. United States, 8 Cir., 40 F.2d 338, 340.'
 "In the Gore case [Gore v. U.S., 357 U.S. 386, 78 S.Ct. 1280, 1285, 2 L.Ed.2d 1405], where the court considered sentences identical to those in the case at bar without mentioning Section 2106, the opinion concluded with this statement:
 "`In effect, we are asked to enter the domain of penology, and more particularly that tantalizing aspect of it, the proper apportionment of punishment. Whatever views may be entertained regarding severity of punishment, whether one believes in its efficacy or its futility, see Radzinowicz, A History of English Criminal Law: The Movement for Reform, 1750-1833, passim, these are peculiarly questions of legislative policy. Equally so are the much mooted problems relating to the power of the judiciary to review sentences. First the English and then the Scottish Courts of Criminal Appeal were given power to revise sentences, the power to increase as well as the power to reduce them. See 7 Edw. VII, c. 23, § 4 (3); 16 17 Geo. V., c. 15, § 2 (4). This Court has no such power.'
 "Generally the courts have held that a sentence within the limitations of a valid statute is not `cruel and unusual' punishment. United States v. Rosenberg, supra, and cases cited; Edwards v. United States, 10 Cir., 206 F.2d 855; Hemans v. United States, 6 Cir., 163 F.2d 228, certiorari denied, 332 U.S. 801, 68 S.Ct. 100, 92 L.Ed. 380; United States v. Sorcey, 7 Cir., 151 F.2d 899, certiorari denied, 327 U.S. 794, 66 S.Ct. 821, 90 L.Ed. 1021; Ginsberg v. United States, 5 Cir., 96 F.2d 433; Jackson v. United States, 9 Cir., 102 F. 473.
 "This court has used language which might indicate that appellate courts have power to interfere if a sentence is `clearly cruel and unusual,' but it has never done so. Hayes v. United States, supra; Richards v. United States, 10 Cir., 193 F.2d 554, certiorari denied, Krupnick v. U.S., 343 U.S. 930, 72 S.Ct. 764, 96 L.Ed. 1340; Schultz v. Zerbst, 10 Cir., 73 F.2d 668. In Moore v. Aderhold, 10 Cir., 108 F.2d 729, 732, we said: `where the sentence imposed *Page 549 
is within the limits prescribed by the statute for the offense committed, it ordinarily will not be regarded as cruel and unusual.' See also Edwards v. United States, supra."
Reliance is had upon Smith, supra, in the midst of a multitude of other cited cases, for the emphasis supplied portion of the following statement:
 "In some jurisdictions it is held that punishment within the limits fixed by statute is not excessive, and ordinarily does not constitute cruel or unusual punishment within the meaning of constitutional restrictions, unless the punishment fixed by the statute is cruel and degrading punishment, not known to the common law. . . ." 24B C.J.S. Criminal Law
§ 1984.
The punishment provided by Code of Alabama, 1971 Cum. Pocket Part, § 258 (47), for the possession of heroin, as well as for other criminal conduct with reference to it, is not less than two nor more than fifteen years imprisonment and, in addition, there may be a fine not to exceed twenty-five thousand dollars. In a recent case under the Alabama Controlled Substances Act, we continued to apply the principle established in Alabama, without exception, that where a sentence is within statutory limits, appellate courts do not have revisory power as to the discretion of the trial court in fixing the sentence. Moore v.State, 54 Ala. App. 463, 309 So.2d 500. Notwithstanding the necessity for our ruling as we do, we think it should be stated that, although it appears that defendant had never been previously convicted of a felony and that the conviction here was for possession, not for a sale, the amount of heroin involved, valued at approximately twenty-five hundred dollars, speaks for itself as to defendant's involvement in narcotics and the seriousness of the crime for which he was tried and convicted.
Evidence for the State, as shown by testimony of Detective Richard E. Koerner of the Montgomery Police Department, a narcotics officer, corroborated by Detective Edward H. Munson as to material matters within his knowledge, was that the two officers, accompanied by two other officers, about seven A.M. December 15, 1975, entered Apartment 6-A, 2000 Girard Street, Montgomery, with a warrant to search said premises for heroin and drug paraphernalia. Detective Koerner had obtained the warrant December 11. He had made a detailed affidavit, setting forth that he had been advised by three informants that defendant was in possession of a quantity of heroin and that the informant had observed a quantity of heroin at the apartment searched. In his testimony, Detective Koerner said that he knew defendant, had had him under surveillance, though not a continuous surveillance, for about two weeks, and had observed him going to and coming from the particular apartment on several occasions; he had seen defendant there the night before the search was made. He provided the judge who issued the search warrant with information that defendant was known to the witness as a drug abuser in the past and that the witness had been informed by two separate sources that they had seen defendant in possession of heroin and by a third source of information that defendant was selling heroin.
After knocking on the door for a while and receiving no response, the officers forced an entry. Defendant and the woman resident of the apartment were in bed together. On the dresser in the bedroom was a bag of marijuana, in plain view, according to both detectives, and as to which there is no dispute in the evidence. Defendant and the woman were informed that they were under arrest for the possession of marijuana. Defendant had on his trousers while in the bed; he was ordered by Detective Koerner to put his hands on the wall, and Detective Koerner proceeded to "pat his pants down." There was a bulge in his right pocket, which Detective Koerner entered and "pulled out twenty-two bags of heroin. The heroin was contained in glassine envelopes.
Appellant contends that there was an invalid search and seizure. He sets forth his reasons for such contention as hereinafter considered. *Page 550 
Although the warrant did not contain the name of defendant or the name of the occupier of the apartment, the affidavit upon which the warrant was based named the defendant as the person in possession of the heroin for which the search was made. In general, it is better that a search warrant contain the name of the owner or occupier of the premises to be searched, but there is no constitutional requirement that it do so. Townsend v.United States, 253 F.2d 461, 464 (5th Cir. 1958); Hanger v.United States, 398 F.2d 91 (8th Cir. 1968) (cert. denied,393 U.S. 1119, 89 S.Ct. 995, 22 L.Ed.2d 124 (1969); United Statesv. Besase, 521 F.2d 1306 (6th Cir. 1975).
In assailing the validity of the search warrant or the search made thereunder, appellant relies upon Haynes v. State,50 Ala. App. 96, 277 So.2d 372 (1973) and Walker v. State,49 Ala. App. 741, 275 So.2d 724 (1973), the one holding the search invalid as based upon an affidavit as to possession of property twenty-two days before the affidavit was made and the warrant issued, and the other containing information as to possession of property in such a vague way as to the time that the court said it could have been "anytime in the past." Appellant does not question the validity of the search warrant on the same time factor basis upon which it was questioned in the cases cited, and indeed it is not subject to such a challenge. Appellant seeks to apply the principle that requires reasonable nearness between the time of the location or possession of property and the time of the issuance of the warrant as the basis for arguing that four days was too great a spread between the issuance of the warrant and the execution thereof. Without attempting to decide that no greater interval of time is permissible in one than in the other, we must conclude that much depends upon the circumstances of each particular case, and that the expiration of a period of four days between the issuance and the execution of the warrant did not vitiate it. During that period the officers were obviously considering both their own duty in the matter and the rights of persons that might be affected by the search. They had the right, and it was their duty, to bide their time reasonably in searching the premises, in order for the search to be successful and at a time that would not impose unnecessary injury to or hardship upon persons affected by the search. Even if the question of any staleness in the execution of the warrant is to be analogized logically with the question of staleness in the issuance of a warrant, upon which appellant seems to insist, the four-day delay did not make the warrant no longer effectual by reason of claimed staleness. Where unlawful activity consists of a course of conduct there is less ground for a claim of staleness than when it consists of an isolated violation of the law. United States v. Harris, 482 F.2d 1115
(3rd Cir. 1973); United States v. Johnson, 461 F.2d 285 (10th Cir. 1972); Schoeneman v. United States, 115 U.S.App.D.C. 110,317 F.2d 173 (1963). In United States v. Mustone, 469 F.2d 970
(1st Cir. 1970) it was held that a delay of eight days in the issuance of a warrant was not unreasonable.
Appellant also urges that as two of the informers are not shown by the affidavit as being reliable, the warrant based thereon was invalid. The contention overlooks the fact that the affidavit does show that one of the informers was reliable. Moreover, the testimony shows that the affiant had personal knowledge of the defendant's visits to the apartment searched, during the period that he had defendant and the premises under his surveillance, prior to the issuance of the warrant. The validity of the warrant and the search of the premises is supported by Avery v. State, Ala.Cr.App., 336 So.2d 195 (1976), wherein Judge Harris spoke to a similar situation as follows:
 "We have carefully considered the affidavit in this case and hold that it meets the tests laid down in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723; Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637; Bates v. State, 51 Ala. App. 338, 285 So.2d 501, and Russell v. State, 53 Ala. App. 447, 301 So.2d 214. *Page 551 
 "The affidavit states positively that the reliable informer personally saw appellant's husband in possession of marihuana at the described residence within the past 48 hours, and further the informer had given affiant information recently that proved to be true and correct and upon which convictions had been obtained. In addition to this the affiant had personally observed people coming to and leaving this residence who had the reputation of using marihuana. This affidavit more than meets the `two-prong' test required in Aguilar as to the veracity of the informer and the basis of his knowledge that the drugs were where he said they were."
The trial court was not in error in overruling defendant's motion to quash the search warrant.
Appellant questions the sufficiency of the evidence to support this conviction. In doing so, he relies largely upon testimony presented by him and the woman with whom he was in bed when the officers entered the apartment. They both testified that other people had been in the apartment with them for a long time after midnight. It is argued that "it would have been possible for someone to have placed any Heroin allegedly found in Defendant's possession in his pocket." Defendant testified that after the others had left at about 4:00 A.M., he attempted to call a cab to go to his home; not being able to get a cab, he went back to the apartment and told Rosalyn that he would stay until 7:00. The evidence of the detectives is that defendant and the woman were lying in the bed, bare from their waists up. It is hardly conceivable that the heroin would have been in a pocket of his trousers for three hours without his knowledge. Furthermore there was testimony by Detective Koerner that defendant "turned to Rosalyn" and said with reference to the heroin, "Don't say nothing, baby. It's mine. Don't say nothing." The evidence amply sustains the finding that defendant knowingly had heroin in his possession.
We have searched the record for error prejudicial to defendant and have found none.
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Supernumerary Circuit Judge LEIGH M. CLARK serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.