353 So.2d 54 (1977)
George THOMAS, alias
v.
STATE.
6 Div. 204.
Court of Criminal Appeals of Alabama.
October 25, 1977.
Rehearing Denied November 15, 1977.
*55 George P. Seabourne, Birmingham, for appellant.
William J. Baxley, Atty. Gen., and James L. O'Kelley, Asst. Atty. Gen., for the State.
TYSON, Presiding Judge.
George Thomas was charged by indictment with possession of heroin. The jury found the appellant guilty as charged, and the trial court set sentence at five years imprisonment, in addition to a $15,000.00 fine fixed by the jury.
Lieutenant James E. Bibb testified that he was assigned to the Patrol Division of the Birmingham Police Department on March 14, 1973. Bibb stated that on said day, around 4:45 p. m., he and several other officers executed a search warrant for Apartment H, 2624 Tempest Drive, Birmingham, Alabama, the residence of Sophia Marie Haley. The item named in the warrant to be seized was heroin. Bibb had obtained the search warrant based upon his own affidavit, which stated, in part, that a reliable informant had observed heroin being sold at this address. Bibb stated that the apartment door was open when he and several other officers arrived that evening. Bibb testified that Haley, Haley's daughter, the appellant, and one other person were present at the apartment when the warrant was executed. According to Bibb, everyone in the apartment was told to sit in the living room after they were first patted-down for weapons, including the appellant. After searching for approximately one hour and forty-five minutes, the officers turned up only some marijuana and barbiturates in the apartment. Bibb stated that Joe Aloia of W.S.G.N. News Department had accompanied the officers to the apartment that evening. After the search was completed, Officer Price, according to Bibb, asked Aloia to take a picture of himself with appellant because appellant looked like a good friend of his. Bibb stated that Officer Price put his arm around appellant's shoulder *56 and in this process knocked appellant's hat off. Bibb testified that Price could have knocked the hat off appellant's head deliberately. Bibb stated that twenty small foil packets fell from under appellant's hat. Officers Harris and Price testified substantially the same as to the circumstances. Officer Price did, however, testify that he knocked appellant's hat off his head accidentally.
Arthur Craig Bailey, employed by the City of Birmingham, Department of Toxicology, testified that he examined the white powdery substance found in the twenty foil packets. Bailey stated that he found the substance to contain heroin.
George Thomas, appellant, testified at the suppression hearing. He stated that thirty minutes before the search was conducted, a black male came to the door of the apartment asking to buy some heroin. Thomas indicated that he told the man to leave, that heroin was not sold at that apartment. The black male who asked to buy the heroin, according to appellant, was one of the four officers who conducted the search thirty minutes later. Appellant stated that he refused to have his picture taken with Officer Price, and that Price "snatched" the hat from his head.

I
The affidavit, upon which the search warrant was issued in this case, is set out, in part, as follows:
". . . On February 23rd, 1973, a search warrant was served at 2624 Tempest Drive, Apartment H, residence of Marie Haley. A quantity of heroin was seized on this date. On the afternoon of March 6th, 1973, an undercover police officer purchased a quantity of heroin from Eric Rogers at 2624 Tempest Drive, Apartment H. On March 13th, 1973, I received information from a reliable informant who has given me information over a period of the last 30 days which has led to narcotic cases being made with trials pending. This informant gave me information that he had observed heroin being used and sold at 2624 Tempest Drive, Apartment H, Birmingham, Alabama."
For the reasons hereinafter set out, we are of the opinion that the affidavit was legally insufficient to support the issuance of a search warrant, and that appellant's motion to suppress the heroin should have been granted.
The affidavit is deficient because it fails to show that the information received from the informant was fresh as opposed to being remote. Davis v. State, 46 Ala.App. 45, 237 So.2d 635, affirmed, 286 Ala. 117, 237 So.2d 640. The affidavit stated that the informant "had observed" heroin being used and sold from the premises described. The affidavit does not state the date or the time the informant allegedly observed the heroin on the premises. The affidavit in this case is strikingly similar to one this Court, through Harris, J., ruled to be legally insufficient. Walker v. State, 49 Ala.App. 741, 275 So.2d 724, cert. denied, 290 Ala. 371, 275 So.2d 732.
In Walker, supra, Judge Harris stated:
". . . `Had observed' could have been any time in the past. The informer did not tell the officer-affiant the date or time he allegedly observed the narcotics on the premises. There is nothing in the affidavit which hints of time except the use of the past tense in connection with the informant's telephone report to affiant."
The fact that heroin was previously seized on February 23, 1973, at 2624 Tempest Drive, Apartment H, did not establish probable cause to believe that heroin was on the premises three weeks later.
Also, the fact that on March 6, 1973, an undercover police officer purchased a quantity of heroin from Eric Rogers on the premises did not establish probable cause to believe that a week later such narcotic would be still found thereon. Seven days is a considerable length of time in which to remove heroin from the premises or dispose of it in another fashion. Such makes for a stale warrant. Haynes v. State, 50 Ala.App. 96, 277 So.2d 372; Miller v. State, 54 Ala.App. 230, 307 So.2d 40.
*57 Thus, the "two-prong test" set forth in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723, and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637, was not here met.

II
Assuming arguendo a legally sufficient affidavit existed upon which to issue a valid search warrant, still we believe that the search of appellant's hat impinged upon his constitutional rights, and was thus unreasonable, and without probable cause (i. e., whether the hat was intentionally or accidently removed from appellant's head has no bearing on this issue).
The appellant was a complete stranger to the officers at the time, was not a suspect involved in the commission of any offense, was not named in the search warrant, and did nothing to indicate by his conduct or appearance that he possessed any weapon. For aught that appears, the appellant was a mere visitor to the apartment. Smith v. State, 52 Ala.App. 114, 289 So.2d 812, affirmed, 292 Ala. 120, 289 So.2d 816, and cases therein cited.
The fact that one associates with narcotics dealers in no way calls for an inference that such person is engaged in the criminal traffic of narcotics. Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917.
The search in this case cannot be justified on the theory that the heroin was found as a result of a "frisk" for weapons. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
The appellant underwent a "frisk" for weapons almost two hours before the hat in question was removed from his head. As stated by this Court in White v. State, 49 Ala.App. 5, 267 So.2d 802, "Once the officer is safe (i. e., the frisk fails to reveal any weapon), no further rummaging is warranted."
For the reasons set forth, the appellant's motion to suppress the evidence should have been granted, and its denial constitutes reversible error. Shipman v. State, 51 Ala.App. 80, 282 So.2d 696, affirmed, 291 Ala. 484, 282 So.2d 700.
Because of the errors shown, if follows that the judgment below is due to be reversed and the cause remanded for a new trial.
REVERSED AND REMANDED.
BOOKOUT, J., concurs.
HARRIS and BOWEN, JJ., concur in the result.
DeCARLO, J., dissents with opinion.
DeCARLO, Judge, dissenting.
I cannot agree with the majority conclusion that the affidavit in this case was deficient because it failed to show that the information received from the informant was fresh as opposed to being remote.
The rule involving vagueness of the time element in supporting affidavits for search warrants evolved as a result of Sgro v. United States, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260. There the court said:
"While the statute does not fix the time within which proof of probable cause must be taken by the judge or commissioner, it is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time."
This court in Walker v. State, supra, said:
"To support a search warrant the proof supplied must speak as of the time of the issuance of the warrant."
In simple terms, the affidavit supporting the search warrant must indicate proof that the premises, person, place or thing to be searched presently contains the fruits of the crime.
The United States Court of Appeals in United States v. Johnson, 461 F.2d 285 (10th Cir.), observed:
". . . it should be noted that the vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts relied upon and the issuance of the affidavit.. . . However, where the affidavit *58 properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant."
In Bastida v. Henderson, 487 F.2d 860 (5th Cir.), the court noted:
"The Circuits hold that where an affidavit recites a mere isolated violation then it is not unreasonable to believe that probable cause quickly dwindles with the passage of time. On the other hand, if an affidavit recites activity indicating protracted or continuous conduct, time is of less significance." [Emphasis added].
The Supreme Court of Connecticut in State v. Rose, 168 Conn. 623, 362 A.2d 813, went further and stated that an exception exists to the rule that facts and circumstances in an affidavit supporting a search warrant must be current and timely on the day of issuance. There the court said:
"An exception to this rule is where the court finds facts indicating the likelihood that there is a continuing criminal activity."
The court went on to say:
"The facts indicating this continuity must satisfy the same requisites of reliability as other facts within the affidavit that purport to evidence probable cause." State v. Rose, supra.
In the present case the facts cited in the affidavit disclosed that approximately eighteen days prior to the issuance of the search warrant, a quantity of heroin was seized on the same premises. Approximately seven days before the warrant was issued, an undercover officer purchased a quantity of heroin at the named location. The information related by the informer indicated that heroin was being sold and used at the address sought to be searched. These facts indicate an on-going criminal activity preceding the application for the warrant. Under these circumstances the issuing magistrate could have reasonably concluded that probable cause existed at the time the warrant was issued.
The majority has also concluded that the search of the appellant's hat was without probable cause, unreasonable and unconstitutional.
In my judgment, the facts outlined in this case, although in conflict, posed a question for the trier of fact. When the trial judge was determining probable cause, he had for his consideration the question whether or not the appellant's hat was inadvertently knocked from his head. Undoubtedly, this question was answered in the State's favor. Once the hat hit the floor, and the contents fell out, they became subject to the plain view doctrine and were unquestionably admissible.
On the proposition that the search of the hat was improper if it was intended to be a frisk for weapons, it is my judgment, that the right to conduct a frisk continued until the officers left the scene.
Nowhere in the record does it indicate that the appellant's hat was searched at the outset when the so-called "frisk" for weapons was made. Often when officers enter a place to be searched, the search for weapons on the person is done very hastily. A later "frisk" of an area of the person that was not initially searched is not unreasonable. In fact, it may prevent an officer from being injured or even killed.
I am not aware of any decisions that prohibit a later search for weapons on an area of the person that was not searched in the beginning.
For these reasons, I believe the appellant's motion to suppress should have been denied and the judgment of conviction affirmed.