BOWEN, Judge.
The defendant was indicted and convicted for the unlawful possession of marijuana. Alabama Code 1975, Section 20-2-70. The jury assessed a fine of fifteen thousand dollars and the judge imposed a sentence of eleven years’ imprisonment.
The major issue on appeal concerns the propriety of the warrantless search of the defendant’s automobile and briefcase.
On August 31, 1978, Lieutenant Richard Anderson of the Huntsville Police Department received information from Huntsville Police Patrolman Donald Ray Smith that an informer, who was never identified, had told Smith that the informer had observed a large quantity of marijuana at a house on Aspen Village or Aspen Drive in Tuscaloosa. The informer gave the defendant’s name and said that the defendant drove a red Volare which should be there at the residence.
After Smith gave Lieutenant Anderson this information, Anderson telephoned Earl Walden, a State Narcotics Officer assigned to the West Alabama Narcotics Squad in Tuscaloosa, and relayed this same information. After learning the defendant’s specific address from the telephone book, Warren and other officers of the West Alabama Narcotics Squad placed 403 Aspen Village under surveillance at approximately 12:00 noon on August 31, 1978.
At some point after the surveillance had been established, Agent Ronnie Robertson telephoned the apartment, having obtained the number from the telephone book. Both the defendant and the State have described this call as a “ruse”. Agent Robertson “believed” he talked to the defendant.
“I told the person on the other end of the line that he did not know me but that I was up at the courthouse and overheard two people one which was the district attorney and a narcotic agent speaking in the hallway in front of the district attorney’s office about serving a paper on Samuel Stikes at the address where they lived.”
Robertson stated that the defendant responded:
“The person at the other end of the line acted as if they didn’t care really.”
♦ sf¡ s(! sf:
“They stated that why should it matter to me ..."
*180 Approximately five to fifteen minutes after this telephone call, agents saw the defendant walking from the direction of Apartment 403 carrying a briefcase or a small •piece of luggage. The defendant entered a rust-colored Volare and drove out of the parking lot. There was no evidence that the defendant “ran” from the building or drove away at an unusual rate of speed.
Within a short distance the narcotics agents stopped the defendant, identified themselves as police officers, and told the defendant that they had probable cause to believe he had controlled substances in his vehicle. Agent Walden removed the key from the defendant’s automobile and opened the trunk where he observed marijuana residue scattered “all over the trunk”. The defendant was then placed under arrest.
The briefcase the defendant was seen carrying was in the back seat of the Volare. After the trunk had been opened and the defendant placed under arrest, Agent Robertson asked the defendant if he knew the combination. The defendant stated that he did and “went over (to) the briefcase and dialed the combination to the combination lock.” Robertson then opened the case and found more marijuana, an automatic pistol, five thousand dollars in cash, and some unidentified papers.
The issue of legality of the warrantless stop and search of the defendant’s automobile turns on whether the narcotics agents had probable cause to believe that it contained contraband. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).
In brief the State argues that the basis for the finding of probable cause is found in the following facts:
“(a) An indirect informant’s tip that he had seen marijuana in a house on Aspen in Tuscaloosa ...; (b) An assertion that the informant was reliable . . .; (c) That the Appellant drove a red Volare which would be at the residence . . .; (d) The name of Sam Stikes . . .; (e) Information obtained from the Tuscaloosa telephone book that a Sam Stikes lived at 403 Aspen Village . . .; (f) Police observation that some minutes after a ruse call by the police to a number asserted to be that of the Appellant’s apartment, a man carrying a piece of luggage came from the direction of Building # 403 .. .; (g) The man entered a red Volare, placed the luggage on the back seat of the car and drove off ...” (Citations to page numbers in record omitted).
A tip from an informant will be sufficient, unto itself, to establish probable cause, Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), where it meets the constitutional standards of “Aguilar’s two-pronged test”. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Here, we are not concerned with the “basis of knowledge prong” as the unidentified informant disclosed that he gained his knowledge from personal observation. However, the tip is deficient and does not meet the second requirement of Aguilar because the evidence does not reveal “some of the underlying circumstances from which the officer concluded that the informant . . . was ‘credible’ or his information ‘reliable’.” Aguilar, 378 U.S. at 114-115, 84 S.Ct. at 1513-1514.
From the testimony it is clear that the only basis for concluding that the unidentified informant was reliable is Lieutenant Anderson’s testimony that Officer Smith’s informer was reliable because Officer Smith said he was.
“A. I (Anderson) only took his (Smith’s) word that it was reliable.
“Q. You didn’t know anything about the reliability of it did you?
“A. No, sir, except the word from one officer to another.
“Q. No name or anything was given to you to base your reliability on, is that right?
*181 “A. Only the officer’s word that he was reliable, that the informant was reliable.”
He * * * * *
“A. As one police officer to another I asked him about the reliability of the informant and he affirmed that reliability.”
* * * * * *
“Q. Did he tell you the source from which he got his information had proven reliable to him?”
* * * * (Objection Omitted)
“A. I asked him about the reliability of his informant and he said his source was reliability (sic).”
The only information from which this Court can determine the inherent credibility or reliability of the informant is from Lieutenant Anderson’s statement that Smith said the informant was reliable. This is clearly insufficient and creates a fatal defect in the trial judge’s determination of probable cause.
In Aguilar, supra, where the informant was described merely as a “credible person”, the United States Supreme Court concluded that such an allegation was insufficient because it was a “mere conclusion” lacking “some of the underlying circumstances from which the officer concluded that the informant ... was ‘credible’.” In Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the Court indicated that the affidavit at issue there could not stand based upon the informer’s tip itself, for though “the affiant swore that his confidant was ‘reliable’, he offered the magistrate no reason in support of this conclusion.”
“Aguilar and Spinelli thus make it clear that while assessments of informant credibility are ordinarily based upon past performance, a mere allegation that the informant is ‘credible’ or ‘reliable’ does not permit the judicial officer to assume that there was such past performance and that the performance was of a nature to merit such a characterization of the informant.” W. LaFave 1 Search and Seizure 508-509 (1978).
While “very little is required of the affiant to prove the reliability of his informer”, Rickman v. State, 361 So.2d 22, 24 (Ala.Cr.App.), reversed on other grounds, 361 So.2d 28 (Ala.1978); see also Neugent v. State, 340 So.2d 52 (Ala.1976) and State ex rel. Attorney General, 286 Ala. 117, 237 So.2d 640 (1970), a “mere conclusion on the part of an officer that an informant is ‘truthful’ or ‘reliable’ has been held to be insufficient. Hayes v. State, 50 Ala.App. 96, 277 So.2d 372 (1973).” Roberson v. State, 340 So.2d 459 (Ala.Cr.App.1976). See also Waters v. State, 360 So.2d 347 (AIa.Cr.App.), cert. denied, 360 So.2d 358 (Ala.1978); Pilkington v. State, 343 So.2d 548 (Ala.Cr.App.1977).
If a tip is found inadequate under Aguilar, “the other allegations which corroborate the information contained in the hearsay report should then be considered.” Spinelli, 393 U.S. at 415-416, 89 S.Ct. at 1514-1515. Here we have insufficient information to satisfy either “spur” of the veracity prong. We have none of the underlying circumstances from which the officer concluded that the informant was “credible” or “his information reliable”. Aguilar, supra; Moylan, Hearsay and Probable Cause: An Aguilar and Spinelli Primer, 25 Mercer L.Rev. 741, 761-65 (1974).
“When the recitation going to ‘veracity’ falls short of Aguilar’s threshold, further inquiry is not estopped. There is still the extrinsic route to the establishment of ‘veracity’. Even where the internal evidence about the informant himself, or about the circumstances under which the information was furnished, fails to establish intrinsically personal ‘credibility’ or informational ‘reliability’, external evidence, contained elsewhere in the application (for a search warrant), may be examined to see what buttressing it provides. Independent police or other credible observations may tend to verify — to corroborate — the story as told by the informant.” Moylan, 25 Mercer L.Rev. at 777-8.
In this case the verification was only slight and not enough to salvage an initial assertion as to the informant’s credibility which *182 was so inadequate under Aguilar as to be nugatory. Reviewing the evidence, it cannot fairly be said “that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass Aguilar’s test without independent corroboration.” Spinelli, 393 U.S. at 415-16, 89 S.Ct. at 588-589.
In this case there was no corroboration of any incriminating detail. Indeed the only incriminating detail contained in the tip was that a large quantity of marijuana had been observed inside the defendant’s residence. Consequently, the officers were only able to corroborate innocent details. From this, we find that there was “an insufficient nexus between the corroborated detail and the alleged crime to negate the chance that the informer is, for his own reasons, pointing to an innocent man.” Moylan at 748-9 fn. 41.
Admittedly, some argument can be made that the “ruse” telephone call provided sufficient independent police observation to establish probable cause to believe the informant. Yet, the informant stated that a large quantity of drugs was located inside the apartment. The only fact mentioned about the red Volare was that it was driven by the defendant and should be parked at the residence: “The subject had a red vehicle which he drove and it should be there at his residence.” Therefore, even if the fact that the defendant left the apartment with briefcase in hand shortly after receiving the ruse telephone call furnished probable cause to believe that there were contraband drugs located within the apartment or even contained in the briefcase, this information furnished absolutely no cause or reason whatsoever, beyond a mere suspicion, that drugs were in the trunk of the defendant’s automobile. The agents, who had been observing the Volare both before and after the telephone call, had absolutely no reason to believe that there were any drugs in the trunk. They never saw anyone place anything in the trunk and the informant gave them reason to believe only that a large quantity of marijuana was in the apartment. See State v. Joseph, 351 So.2d 1162 (La.1977).
Furthermore, the evidence does not reveal when Officer Smith obtained his information from the confidential informant. Agent Walden testified that Lieutenant Anderson stated that the “information was that there was a large quantity of marijuana observed at his residence on the date prior to the 31st of August.” Lieutenant Anderson stated that Smith said that he did not know how recently his informant had seen the marijuana. Vagueness in the time element of an informant’s tip renders it defective and insufficient. Ex parte State ex rel. Attorney General, 286 Ala. 117, 237 So.2d 640 (1970); Miller v. State, 54 Ala.App. 230, 307 So.2d 40 (1975); Annot. 100 A.L.R.2d 525 (1965).
Since these facts would not have authorized the issuance of a search warrant for the trunk of the defendant’s automobile, they likewise will not authorize a finding of probable cause for the warrantless search of the automobile trunk.
Because of the findings we have made in this opinion, it is not necessary to consider the other issues raised by the defendant on appeal. Because of the failure to prove the existence of probable cause to search the trunk of the defendant’s automobile, the admission into evidence of the marijuana found in that trunk was reversible error. The judgment of the Circuit Court is reversed and the cause remanded.
REVERSED AND REMANDED.
All Judges concur.