409 So.2d 1075 (1981)
Bernard KAYES and Jerry Palmer, Appellants,
v.
STATE of Florida, Appellee.
Nos. 80-1257, 80-1753.
District Court of Appeal of Florida, Second District.
December 30, 1981.
Rehearing Denied February 8, 1982.
*1076 H. Dohn Williams, Jr., of Varon & Stahl, Hollywood, for appellant Kayes.
Robert P. Foley of Foley & Colton, West Palm Beach, for appellant Palmer.
Jim Smith, Atty. Gen., Tallahassee, and Michael A. Palecki, Asst. Atty. Gen., Tampa, for appellee.
SCHEB, Chief Judge.
Appellants Bernard Kayes and Jerry Palmer each entered a plea of nolo contendere to trafficking in cannabis, each reserving his right to appeal the denial of a motion to suppress the cannabis. The trial judge sentenced Kayes to ten years in prison and a $15,000 fine and costs, and Palmer to three years in prison followed by five years probation. On appeal appellants contend the court erred in denying their motions to suppress the cannabis. They argue that the seizure by the police was based on information obtained by officers when they illegally stopped their vehicle. We agree that there was no well-founded suspicion for the police to stop the vehicle. However, while Palmer, who rented and drove the car, has standing to challenge the search, Kayes, a mere passenger, does not.
The only testimony offered at the suppression hearing was that of Ralph F. Cunningham, chief investigator for the state attorney's office. Cunningham, who had a wealth of experience in narcotics investigation, outlined the profile of a typical drug smuggling operation in Florida. Drug smugglers use medium-sized boats to meet freighters carrying marijuana. These boats are met in turn by swift racing boats which transport the marijuana to shore where it is off-loaded into large capacity vehicles and stored in warehouses. From the warehouses, marijuana is transported by vehicles to various dealers.
Cunningham then related the observations which caused him to suspect appellants were transporting marijuana. The dockmaster for the Keewadin Dock reported that he observed boats and vehicles capable *1077 of transporting large quantities of marijuana at his dock. In addition, he noticed that the people manning these vessels spent large sums of money. A Collier County deputy sheriff reported that some vehicles and vessels similar to those used in smuggling operations had been seen at the Rainbow Stained Glass warehouse which was located some nine miles from the Keewadin Dock. At least one boat which had been seen at the warehouse was observed some two weeks later at the Keewadin Dock. However, no vehicle or vessel was actually seen traveling from the dock to the warehouse. The police checked the license numbers of some twenty to thirty boats and vehicles in that area of the county and found that two years earlier United States Customs officials had seized, but later returned, one boat. Cunningham concluded that the described activities met what he considered to be a typical drug smuggling operation profile, so he had the warehouse and two residences placed under surveillance.
On March 16, 1980, the police conducting the surveillance observed a stepvan parked inside the warehouse. At approximately 4:00 p.m. that same afternoon, a blue and white Ford LTD driven by Palmer entered the warehouse. The officers became suspicious when they saw Kayes and Palmer leave the warehouse and observed that their Ford was weighted down with its chassis close to the ground. Cunningham followed appellants in an unmarked police car to a restaurant. While appellants were eating, Cunningham attempted to detect an odor of marijuana around the vehicle, but was unable to do so. Cunningham stated the appellants appeared nervous while they were eating. When appellants left the restaurant, he notified a deputy to stop their vehicle through the use of a ruse. The deputy stopped the vehicle before it got to the county line. Palmer, who had rented the vehicle, was driving; Kayes was a passenger.[1] The deputy told appellants that they were suspects in a burglary of the warehouse. They denied the accusation and refused to give the police permission to search the trunk of their car. Cunningham arrived on the scene, smelled through the keyhole of the car and detected a faint odor of marijuana. As a result, the police seized the car and obtained a warrant to search it. When the search revealed marijuana in the trunk, they obtained another search warrant for the warehouse and seized additional marijuana there.
For an officer to make a valid investigatory stop of an automobile, it is not essential that the officer have probable cause to believe that the occupants have committed, or are committing, a crime. However, it is required that the officer have a founded or reasonable suspicion of criminal activity which merits further investigation. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Payton, 344 So.2d 648 (Fla. 2d DCA 1977); § 901.151, Fla. Stat. (1979). Thus, the legality of the stop is dependent upon the facts within the officer's knowledge. Taylor v. State, 384 So.2d 1310 (Fla. 2d DCA 1980). Here, the evidence before the court fell short of demonstrating that the officer had a well-founded suspicion of criminal activity sufficient to justify their stop of the vehicle.
Prior to seizing the vehicle, the police had no actual knowledge that appellants were engaged in any criminal activity. The officer's suspicions were based on the profile of typical drug smuggling activities.[2] *1078 We think, however, that meeting the criteria of such a profile does not, in and of itself, create a well-founded suspicion of criminal activity. As appellants left the warehouse, the police assumed drugs were weighting the vehicle down. However, from all appearances, the warehouse was part of a legitimate business operation. Cunningham had looked through the warehouse windows and observed nothing indicating criminal activity. Moreover, the police had no information that contraband was stored there. Finally, as no one observed the van into which Cunningham suspected marijuana had been loaded proceed from the dock to the warehouse, no actual connection between the suspicious activity at the docks and that at the warehouse was established. Thus, an equally valid inference would have been that stained glass weighted the car down. Cf. Mock v. State, 385 So.2d 665 (Fla. 2d DCA 1980), in which the stop of a car was justified because the informant disclosed that a plane was flying in marijuana, and the car left from the area where the plane had landed. In short, while a profile of a smuggling operation may help identify criminal activity, it can also encompass innocent citizens. For example, Cunningham's testimony at the suppression hearing revealed that the police had stopped the vehicle of two innocent citizens when they left the warehouse.
If the stop of a vehicle is invalid, any evidence resulting from the stop is inadmissible. Whitley v. State, 349 So.2d 840 (Fla. 2d DCA 1977). Therefore, because the stop of the vehicle was illegal, the seizure of the contraband from the trunk and warehouse was also illegal. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); D'Agostino v. State, 310 So.2d 12 (Fla. 1975); Stanley v. State, 327 So.2d 243 (Fla. 2d DCA 1976).
Automatic standing to challenge an unreasonable search and seizure no longer arises when a party is charged with possession of items seized. United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); Smith v. State, 400 So.2d 27 (Fla. 2d DCA 1981). Thus, only Palmer, who rented and operated the vehicle had the requisite expectation of privacy to challenge the search.
We have examined the other points raised by appellant Kayes and find them to be without merit. Accordingly, we affirm the denial of his motion to suppress and affirm his conviction and sentence. We reverse the denial of Palmer's motion to suppress and vacate his conviction.
HOBSON and OTT, JJ., concur.
NOTES
[1] Since the relationship of appellants to the vehicle was not evident from the suppression hearing, we relinquished jurisdiction to enable the trial court to determine if appellants had standing to challenge the search of the vehicle. After conducting an evidentiary hearing, the trial court concluded that Palmer, who rented and was the operator of the vehicle, had standing to challenge the search, but Kayes, the passenger, did not. After examining the transcript of the hearing, we agree with that determination.
[2] The Supreme Court has characterized a drug profile as a "somewhat informal compilation of characteristics believed to be typical of persons unlawfully carrying narcotics." Reid v. Georgia, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980). In Reid the court held that the officers could not as a matter of law reasonably suspect the defendant of criminal activity because he fit a "drug profile." Likewise, a drug smuggling profile, a loose set of characteristics believed to be typical of a drug smuggling operation, cannot constitute a reasonable suspicion of criminal activity enabling an officer to stop a participant.