GLICKSTEIN, Judge.
This is an appeal by the state from an order granting appellee’s motion to suppress. We reverse and remand.
The only issue is the legality of a vehicular stop under the Florida Stop and Frisk Law, section 901.151, Florida Statutes (1981).[1] The transcript of the hearing upon the subject motion reveals the basis for the trial judge’s order. He expressly found that there was no “corroboration” of “incriminating details” by the law enforcement officers who made the questioned stop of a van after they received information from an unnamed, concerned citizen.
In Florida, the term “corroboration” is not necessarily tied to “incriminating details”[2] in these vehicular stop and frisk cases. “Corroboration” may relate to verification of other information, including but not limited to subsequent identification on the part of the observing officer of the individual or vehicle freshly described by an unnamed citizen to the law enforcement agency. As stated in Webb v. State, 398 So.2d 820, 823 (Fla.1981):
Hetland [v. State, 387 So.2d 963 (Fla. 1980),] holds that we may also look to the information provided by the tip and determine its reliability by the specificity of the information and its corroboration by prompt police action finding an individual in the general area of a named location who precisely fits the description given in the BOLO.
See also State v. Klepfer, 392 So.2d 275 (Fla.2d DCA 1980). The point is that the officer’s subsequent observation may, but *1059 need not be, of an incriminating detail.[3] Thus, the key term which unlocks these vehicular stop cases is “founded suspicion”, which is nothing more or less than a common sense test based on awareness, not speculation.
The question, then, is of what were the officers aware in this case. The transcript of the hearing first reflects that Detective Kridos was assigned to the narcotics division of the Fort Lauderdale police department’s organized crime unit; that while in his office he received a telephone call from a concerned citizen whom he did not know and who wished to remain anonymous; that the caller told him he knew that a large quantity of marijuana was being stored at a local yacht center where he worked; that twenty minutes later Detectives Kridos and Israel met the caller at a convenience store; and that the caller told the detectives the following:
1. That earlier in the day another informant working at the yacht center had told the caller of a quantity of marijuana being stored in a warehouse bay at the center.
2. That the caller then went with another person to the easternmost bay of a four-bay warehouse area; and that as he approached it, he smelled marijuana coming therefrom behind the bay’s locked door.
3. That when they reached the bay, the caller was boosted so that he could see into the window of the bay.
4. That the caller saw through the window large brown bale-type packages which filled most of the interior of the warehouse; and that the burlap was off of one of the bales, which had a black, garbage-type covering.
5. That the caller on two previous, but separate, occasions had seen large quantities of marijuana in bale form; and that, in his opinion, what he saw that day through the window of the warehouse was marijuana.
6. That there was a brown Ford van parked on the western side of the warehouse area, the license number of which he gave to the detectives; that the back windows of the van were tinted black, so that you could not see inside; that there was a wood partition behind the driver’s seat, preventing observation to the rear thereof; and that as the caller approached the van, he smelled the odor of marijuana emanating therefrom.
7. That the caller had been at the yacht center for several weeks.
The transcript further reflects that the two detectives and the caller drove together to the yacht center. There they found the subject van parked where the caller had said he had seen it earlier that day. The detectives then surveyed the yacht center from a nearby home after confirming that the van had not been moved. From their surveillance vantage point they could see the rear of the warehouse but not the van, which left the warehouse about an hour later. The detectives followed the van and then stopped it. After appellee was asked to step out of the van, Detective Kridos, while outside the van, smelled a very strong odor of marijuana in bulk quantity (as opposed to smoke) emanating from the van. Thinking there was probable cause to believe that there was a large quantity of marijuana inside the van, Detective Israel entered the van, found forty bales of marijuana therein and placed appellee under arrest.
The totality of the foregoing circumstances, when reviewed in the light of Webb, State v. Stevens, 354 So.2d 1244 (Fla. 4th DCA 1978), and Hetland, reflect officer awareness, not speculation,[4] and a stop based upon founded suspicion.
HERSEY and HURLEY, JJ., concur.

. Two opinions authored by Chief Justice Alderman are the leading cases on the subject: State v. Webb, 398 So.2d 820 (Fla.1981), and State v. Stevens, 354 So.2d 1244 (Fla. 4th DCA 1978). On the general issue of the authority of a law enforcement officer to effect a stop based upon the stop and frisk law, also see the decision of the supreme court in Hetland v. State, 387 So.2d 963 (Fla. 1980), adopting 366 So.2d 831 (Fla. 2d DCA 1979).

. Appellee successfully argued from an Alabama case, Stikes v. State, 397 So.2d 178, 182 (Ala.Crim.App.1980), cert. denied, 397 So.2d 183 (Ala.1981), which propounds the “incriminating details” concept. The federal cases upon which appellee relies here are equally unpersuasive or inapposite.

. See, e.g-, P.S.D. v. State, 388 So.2d 1069 (Fla. 3d DCA 1980) (a subsequent observation of an incriminating detail).

. The only Florida case involving stop of a vehicle on which appellee relied in the trial court, as well as here, is Kayes v. State, 409 So.2d 1075 (Fla. 2d DCA 1981), which supports our conclusion. The court in Kayes properly *1060 recognized that the officers, who had not been made aware of facts that constituted criminal activity, made the stop based on what amounted to a theoretical profile, i.e. bare suspicion.