## STATE OF FLORIDA v. BROWN
### Case No. 84-473 CF
Seventeenth Judicial Circuit, Broward County

May 9, 1984

### APPEARANCES OF COUNSEL

**Susan Aramony,** Office of State Attorney, for plaintiff.
**Susan Porter,** Office of the Public Defender, for defendant.

### OPINION OF THE COURT

J. LEONARD FLEET, Circuit Judge.

DEFENDANT, Eliza Brown, has filed a Motion to Suppress the firearm sought to be utilized by the State in its prosecution of Mr. Brown upon a charge of Carrying a Concealed Firearm. The facts upon which this order is based are taken from the recitation thereof set forth in the Motion to Suppress.

### FINDINGS OF FACT

Shortly before 11:00 p.m. on January 14, 1984, Deputy Keith Feder of the Broward County Sheriff's Office was dispatched to Booker T's

Lounge, located at 2901 N. W. 19th Street in an unincorporated portion of Broward County. The reason given for the dispatch was the report, by an anonymous caller, that there was a disturbance at that location involving a party with a handgun.

Upon arrival at Booker T's Lounge, Deputy Feder found an unidentified male standing outside the door to the package liquor portion of the lounge. The unidentified male pointed out the Defendant as the person who had been observed waving around a handgun inside the Lounge. Deputy Feder observed the Defendant enter a vehicle and occupy the front passenger seat; also in the vehicle were two females. When the vehicle under observation departed, at normal speed, Deputy Feder effected a stop thereof, within eyesight of the Lounge, by beeping his horn and activating his emergency lights. At about this point in time, Deputy Feder was joined by Deputy Celetti.

Illuminating the interior of the vehicle in which the Defendant was a passenger by directing the beam of his spotlight thereon, Deputy Feder observed the Defendant to bend over at the waist, move, and then sit straight up. Deputy Feder then drew his service revolver, exited his police unit and approached the Defendant's conveyance, all the while shining his flashlight upon the occupants of the automobile. Pursuant to the direction of Deputy Feder, all of the occupants of the automobile kept their hands in a position whereby they were visible to Deputy Feder. Observing the absence of any weapon in the hands of the vehicle's occupants, Deputy Feder then advised them of the reason for the stop and ordered that the Defendant exit the vehicle. After the Defendant complied with the deputy's direction, he was detained at the front of the vehicle by Deputy Celetti while Deputy Feder searched the area where the Defendant had been observed to be sitting. Deputy Feder's search ultimately revealed the presence of the handgun now sought to be suppressed from evidence.

Once the firearm was located, the Defendant was searched, which search revealed the presence of an empty holster concealed in his sock. The driver of the vehicle, Mary Ola Bronson, denied ownership of the firearm found under the car seat; the passenger in the rear seat of the automobile made no statement whatsoever other than to give her name. The Defendant was then formally advised that he was under arrest for possession of a concealed firearm.

## ANALYSIS

It is axiomatic that the Fourth Amendment of the United States Constitution and Article I, Section 12 of Florida's Constitution protect the privacy of automobiles and the occupants thereof. Before one can

assert the protections of these organic rights, it is incumbent upon the complaining party to establish the existence of a legally recognized right to the claim of privacy, the illegal invasion of which requires the suppression of evidence obtained pursuant thereto. The legal prerogative to benefits of the above described constitutional provision is frequently referred to as "standing". To obtain "standing", the movant must affirmatively demonstrate the existence of a legitimate expectation of privacy in the place searched. *U. S. v. Salvucci,* 100 S.Ct. 2547 (1980); *Rawlings v. Kentucky,* 100 S.Ct. 2556 (1980); *Inchastegui v. State,* 392 So.2d 319 (Fla. App. 4 1980).

The requirement that there be a demonstration of entitlement, in law, to challenge a search of a motor vehicle, when the challenging party is a mere passenger is not a new concept. In 1978 the United States Supreme Court, speaking through Justice Rehnquist, ruled that the passengers in an automobile were not permitted to challenge the search as being violative of the Fourth Amendment of the United States Constitution, since the search did not violate any of *their* rights. This result was reached even though the passengers were legitimately on the premises, in the sense that they were in the automobile with the permission of its owner, primarily because the passengers were observed to not have asserted either a possessory or a property interest in the automobile. The areas searched were the glove compartment and under the seat. *Rakas v. Illinois,* 99 S.Ct. (1978). When the holding in *Rakas v. Illinois,* supra, is coupled with the decisions in *U.S. v. Salvucci; Rawlings v. Kentucky* and *Inchastegui v. State,* all supra, it takes no great judicial insight to predict the outcome of the matter now before the Court.

In 1981, the First and Second District Courts of Appeal addressed similar issues and arrived at similar results. The First District Court of Appeal, in *State v. W.E.T.,* 399 So.2d 480 (1981), held that marijuana found beneath the seat of a motor vehicle in which the accused was no more than a mere passenger could be utilized in the prosecution of the complaining party for possession of the contraband. The accused was without standing to claim a reasonable expectation of privacy in the area underneath the car seat because he had disavowed any possessory or ownership interest in the vehicle.

It is not at all surprising that the Second District Court of Appeals in *Kayes v. State,* 409 So.2d 1075 (1981), found that one who is a mere passenger in a rented vehicle has no reasonable expectation of privacy therein and is, by operation of law, without standing to challenge the validity of any search of such vehicle. Nor is it surprising, given the analysis of the seminal case above denominated, to find that the Fourth

District Court of Appeal has come down solidly in its commitment that a mere passenger is without constitutional standing to challenge the search of a vehicle in which the passenger disavows possession and ownership interests. *State v. Davis,* 415 So.2d 82 (1982).

Lest it be said that the concept has been overlooked, this Court is satisfied that the stop of the instant vehicle was legally justifiable under the circumstances as they were known to Deputy Feder. He had just been informed that the Defendant had, moments before the Deputy's arrival, been observed to wave a handgun around inside the Lounge, the vehicle in which Defendant was a passenger was then departing the area and, automobiles being mobile by their very nature, it was necessary for Deputy Feder to act rapidly. Judge Grimes, in *Thompson v. State,* 405 So.2d 501, 502 (Fla. App. 2, 1981) made a sad, but accurate, assessment when he wrote:

". . . To have ignored the report that appellant carried a gun . . . would have been naive in today's violent society."

This Court is of the same opinion, viz. for Deputy Feder to have ignored the report of the Defendant having waved around a handgun in public place would have been as naive as believing that a hungry fox running loose in a henhouse will do no damage to the hens therein.

## RULING

Defendant's Motion to Suppress the .25 caliber handgun, serial number 366148, chrome with white grips and four rounds of ammunition is hereby DENIED.